CHARLES BONFANTI, Appellant, *vs.* THE STATE OF MINNESOTA, Respondent.

All questions of law reserved on the trial of a criminal cause, may be reviewed in the Supreme Court on Writ of Error, or when the cause is taken to that Court by virtue of a certificate or "report" of the Judge of the District Court, made under the Statute, but *query*, whether an appeal can be taken from a judgment in a criminal cause?

Upon a trial for an assault with intent to murder, the Court was requested to charge "that if the blow had proved fatal, and death had ensued, the crime must have been *murder in the first degree* under the Statutes of this State, to support the charge in the indictment of an assault with intent to murder; and "that it would not be sufficient for the jury to find that the offence would have been murder had death ensued, but that they must find the prisoner had a positive intention to commit murder." The Court refused the foregoing, but gave the jury the general common law

definition of murder, and charged that to return a verdict of guilty they must find that if the assault had resulted in death, the killing would have been murder within the general definition. That the Defendant's act, had death resulted, must have been murder within the general definition aforesaid, and not manslaughter or justifiable homicide. That the intent to murder must be established by the State beyond a reasonable doubt, but that such intent need not have existed previous to the time of the assault. That it might be formed at any time before the deadly blow was given, with the dangerous weapon used. *Held,* that the charge which gave the jury the "general common law definition of murder," and instructed them "that to return a verdict of guilty, they must find that if the assault had resulted in death, the killing would have been murder within the general definition," was erroneous, and calculated to mislead them.

Where the Statute uses words in defining a crime, different from the general common law definition of the same, the jury should be instructed in the words of the Statute, and not according to the common law definition.

The Court charged "that the plea of insanity is one for the Defendant to establish; that the sanity of mankind being the rule, the burden of proof is on the Defendant to show that an exception exists in his case. That if the Defendant be acquitted on that ground, it must be so stated in the verdict." *Held,* that such instruction was not erroneous under the Statute of this State.

The facts in this case appear at length in the opinion of the Court.

The Appellant's points and authorities are not on file.

The following are the points and authorities of counsel for Respondent:

*First.* Our Statute has not altered the Common Law in reference to murder except as to a single class of cases (viz. cases which were held to be murder simply because the homicide resulted in the commission of, or attempt to commit a misdemeanor) within which class of cases the one at law (had the assault resulted in death) could not by any possibility have fallen. 1 *Hale's Pleas of the Crown*, 433; 1 *Russel*, 422; 1 *Hall*, 457; 4 *Blackstone*, 199; *Wharton's Criminal Law*, 965; *Dady vs. The People*, 2 *Parker's Criminal Reports*, 639.

*Second.* To convict of an assault with intent to murder it is not necessary that had death ensued, the homicide would have been murder in the first degree, nor that a design to effect death should be shown. 7 *Carrington & Paine*, 274; *State vs. Williams*, 3 *Fenter*, (*N. H.*) 321, (*U. S. Digest*, 49.) *Cry vs. The State*, 5 *English*, 318, *Ark*; *Tharpe vs. The State*, 19 *Ohio*, 369; 9 *Yerger*, 342.

*Third.* The presumption of law from the deliberate use of a deadly weapon in a manner calculated to produce death, is, that a premeditated design to effect death existed. *Wharton's Criminal Law*, Sec. 944 *and authorities cited; do. Sec.*1113; *Com. vs. Drew*, 4 *Mass.* 391; *People vs. Clenke*, 3 *Selden*, 385; *do. Sullivan, do.* 396; *State of Indiana, vs. Beauchamp, quoted in 3 Selden on page* 395.

C. Bonfanti *v.* State of Minnesota.

*Fourth.* A premeditated design may exist if it accompanies the fatal blow. *Wharton's Criminal Law. Sec.* 1113; *Com. vs. Smith*, 7 *Smith's Laws*, 647; *State vs. Dunn*, 18 *Mo.* 419. *State vs*'.*Jennings, do. do.* 345; *People vs. Clark*, 3 *Selden*, 385; *do. Sullivan, do.* 396; *State of Indiana vs. Beauchamp, cited in* 3 *Selden*, 395.

*Fifth.* Heat of passion unless excited by adequate provocation would not reduce a homicide from murder to manslaughter. *State of Indiana vs. Beauchamp, cited above. People vs. Johnson*, 1 *Parker's Criminal Law*, 291.

*Sixth.* This indictment contains a sufficient charge of an intent to commit murder in either of the degrees. *People vs. Enveh*, 13 *Wendell*, 159; *do. White*, 22; *do.* 167; *do. do.* 24; *do.* 518.

*Seventh.* Where the defence of insanity is interposed in a criminal case, the Defendant is to make out his plea beyond a reasonable doubt. *Sec.* 259, *page* 570, 562, *Stat. of Minn. Sec.* 211. *Wharton's American Criminal Law, Sec.* 16 *& 711, and authorities cited. Lake vs. The People*, 1 *Parker's Criminal Rep.* 495; *Same case*, 2 *Parker*, 215. *People vs. Robinson*, 1 *Parker* 649; *do. do.* 2 *do.* 325; *People vs. Kirby*, 2 *do.* 31. *Opinion of Judge Gould in case of the People vs. McCann*, 15 *Howard*, 503.

GORMAN & PECKHAM, and J. B. SANBORN, Counsel for Appellant.

I. V. D. HEARD, Counsel for Respondent.

*By the Court.*—FLANDRAU, J. The Defendant, Bonfanti, was indicted by the Grand Jury of Ramsey County, on the 17th day of September, 1858, for the crime of an assault with intent to murder one Alfred F. Stone, and found guilty. The assault was proved and the defence was the insanity of the Defendant. The bill of exceptions made on the part of the Defendant, contains the indictment, the evidence and charge of the Judge with the several exceptions taken thereto by the prisoner's counsel. Appended to the bill is the following certificate of the Judge who tried the cause: "I certify that I

deem the questions of law arising therein of sufficient importance to require the opinion of the Supreme Court thereon."

A notice of appeal was also served by the Defendant's attorneys on the Clerk of the District Court, and the District Attorney. The District Attorney objects to the cause being heard in this Court, claiming that the proceeding *by appeal* is not applicable to criminal actions, and the case not properly here.

Whether an appeal may be taken from a judgment in a criminal action to this Court, it is unnecessary to decide in this case, as we think the record is properly here without determining that question, by virtue of the certificate or "report" of the Judge of the District Court appended to the bill of exceptions. The question was not fully argued, and as there is some doubt concerning it, from the uncertainty of the Statute and the difficulty of ascertaining without much patient research, their true meaning, we hesitate to adopt a rule for future action in so important a matter unless it is clearly essential to the decision of the case in hand, a writ of error is clearly authorized, and when the Judge does not report the case to this Court, all questions of law reserved on the trial can be reviewed by that writ.

Section 220 on page 564, of the *R. S.*, authorizes the Judge when in his opinion any question of law arises on the trial of a criminal action, in which the Defendant shall be convicted, of sufficient importance or doubt, to require the decision of the Supreme Court, to report the case to that Court as far as shall be necessary to present the question, when the Defendant shall desire it or consent thereto, such report stays proceedings in the District Court.

The two subsequent sections in providing for the disposition of the Defendant's person during the pendency of the case in the Supreme Court, speak of Defendants who shall have filed exceptions as provided for in section 219, and of Defendants for whose benefit a report shall have been made as provided by section 220, indicating clearly that a case may go to the Supreme Court on the report of the Judge, without even exceptions having been taken.

The meaning of the Statute is this: that when the Defend-

O. Bonfanti *v.* State of Minnesota.

ant reserves exceptions on the trial, he shall put them into a bill and have them signed by the Judge, they then are attached to and become part of the record ; this may be taken to the Supreme Court in two ways—either by a writ of error, which brings up the record, or by the report of the Judge that it presents questions of sufficient importance, or doubt, to require the decision of that Court, or when no bill of exceptions is made; if the Court thinks that the case presents such questions and the defendant desires it, he may report it up. In either of these instances the case is in the Supreme Court, and all the questions presented by the record may be reviewed.

In examining the several questions presented by the record, it will not be necessary to make a statement of any of the evidence, as it is entirely sufficient to support the verdict of the jury if no error has been committed by the Judge in his charge.

The counsel for the prisoner requested the Court to charge on several propositions relating to the character of the crime charged in the indictment, and also on the question of the defence of Insanity, which I will state the substance of, and discuss separately in connection with the charge given by the Court to the jury.

On the nature of the crime he was requested to charge, in substance, that, if the blow had proved fatal, and death had ensued, the crime must have been *Murder in the first degree,* under the Statutes of this State, to support the charge in the indictment of assault with intent to murder.

That it would not be sufficient for the jury to find that the offence would have been murder had death ensued, but that they must find the prisoner had a positive intention to commit murder.

There were several other points in the request of the Defendant's counsel to the Court, but the above are sufficient to present the question involved.

The Court refused to charge as requested, but did charge as follows :

" The Court gave the jury the general common - law definition of murder ;—then charged that, to return a verdict of guilty, they must find, that if the assault had resulted in death

the killing would have been murder, within the general definition.

"That the Defendant's act, had death resulted, must have been murder, within the general definition aforesaid, or not manslaughter or justifiable homicide.

"That the intent to murder must be established by the State beyond a reasonable doubt, but that such intent need not have existed previous to the time of the assault; that it might be formed at any time before the deadly blow was given or the dangerous weapon used."

By the Statutes of Minnesota, murder is divided into three degrees. The killing, to fall within the first degree, must have been perpetrated with a premeditated design to effect the death of a (the) person killed, or any human being. *R. S.*, *chap.* 100, *sec.* 2, *p.* 492, *as amended by Laws of* 1853, *p.* 24.

There can be no difference of opinion, that a killing, to be murder in the first degree, must be accompanied with *an intention* to kill some human being, whether the particular person killed or another. If a person intended to kill A, and in the attempt to carry out the design on A kills B, it is murder in the first degree, because the crime involves the two essential features of that offense: the killing of a human being; and *an intention* so to do. I use the word *intention*, because the words "premeditated design," used in the statute, necessarily involve *an intention*, without now considering to what degree, and that word will best subserve my purpose in presenting the view I take of the question under consideration.

The second degree of murder is designed to be "where perpetrated by an act eminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual."

Here it is clear that a killing may be murder in the second degree, in the absence of any intent to effect death. This degree is characterized by the depraved condition of the mind of the perpetrator, evinced by the commission of some act in itself eminently dangerous to others—and that act may not amount to a felony in itself, if no evil consequences flow from it, as it will be seen this is essential to satisfy the definition of murder in the third degree.

There are many acts which may not amount to a felony, from the commission of which death may ensue, which would fall within some of the degrees of manslaughter, from the fact that the act the commission of which caused his death was not characterized by that brutal and reckless disregard of life, or was not in itself so eminently dangerous to others as to bring it within the second degree of murder. The placing of an obstruction upon the track of a railroad, with the sole intention of destroying the property of the owners of the road, by one hostile to them, and seeking revenge against them—although by the statute the offense might only be a misdemeanor—might well be held, in the event of a destruction of human life, to be such an act as would bring the killing within the second degree of murder, and yet there would be an absence of any attempt to effect death.

The third degree is defined to be " when perpetrated without any design to effect death, by a person engaged in the commission of any felony." In this degree the Statute expressly declares that no intent to effect death is requisite to complete the crime, but the fact that death is caused by a person in the commission of any felony is sufficient.

The crime with which the Defendant is charged is defined in the Statute *R. S. page* 495, *Sec.* 32, as follows : " If any person shall assault another, with *intent to murder or to maim or to disfigure his person* in any of the ways mentioned in the next preceding section, he shall be punished, &c."

Under this section to convict of an assault with intent to murder, the jury must find the existence of *an intention*, in the mind of the Defendant to murder the party assaulted, because in the absence of such intention there exists but the simple assault; in other words *the intention* to murder is the sole and only feature in the offence which changes it from a simple assault and misdemeanor into a felony. If this view is correct and I have never heard it questioned, then if death should have resulted from the assault, that is had *the intention* had been successfully consummated could the offence have fallen within any but the first degree of murder? It should be remembered in this connection that it is the *existence of the intent to murder*, that we are examining as necessary to be found by the jury to

make out the crime charged, and not the *manner in which it shall be proven or implied, or presumed from the weapon used, or other features which may characterize the assault.* If then *the intention* is absolutely essential to the perfection of the crime charged in the indictment, the finding of that *intention to murder* by the jury so as to convict the prisoner, would place the crime had death ensued, in the first degree of murder, because such feeling would invest the crime with all the essential features contained in the description of that degree and leave it naked of any attribute that could classify it under either of the two lesser degrees.

Suppose the jury to have found the necessary facts to have convicted the prisoner on the charges in the indictment, and superadded the fact that death ensued from the assault, and what do we have? That the Defendant armed himself with a dangerous weapon, to wit, a knife, that being so armed he wilfully and feloniously assaulted Albert F. Stone, with the intention then and there of murdering said Stone, and that he carried out his intention, and did murder said Stone. I see nothing in the facts thus supposed which would make such a killing of a human being, either excusable or justifiable homicide or bring it within any of the various grades of manslaughter. It was not perpetrated in the commission of any other felony, and there was an intent to kill which clearly takes it out of the third degree of murder. There is no such act " eminently dangerous to others and evincing a depraved mind regardless of human life," as is described in the definition of the second degree of murder, and there is *an intention* and design to effect the death of a particular individual, which takes it out of that degree. If murder at all, it is in the first degree. That part of the charge of the Court to the jury which gave them the " general common law definition of murder," and instructed them "that to return a verdict of guilty, they must find that if the assault had resulted in death, the killing would have been murder within the general definition," was erroneous and calculated to mislead them, in that such general definition comprehended both the lesser degrees of murder under our Statute, and also some of the degrees of manslaughter: such charge was in effect to say to them, that had the assault resulted in death, and the

C. Bonfanti *v.* State of Minnesota.

killing could have been classed under any of the heads that would have been murder at common law, and in which an intent to effect death was not essential, still you may convict, or in other words that an actual intent was not essential to the crime.

The qualification that the Court gave to his charge, after laying down the rule generally as above stated, " that the Defendant's act, had death resulted must have been murder within the general definition aforesaid, *and not manslaughter or justifiable homicide*," leaves the question the same, considering its probable effect on the jury, because it left them to suppose that an intent to murder was not essential, according to our reasoning upon the first part of the charge.

The common law definition of the crime of murder is given by Sir Edward Coke thus, "when a person of sound mind, memory and discretion, unlawfully killeth any reasonable creature being and under the King's peace with malice aforethought either express or implied." 3 *Just.* 47. This definition is adopted by *Jacob's Law Dictionary, Vol. 3, page* 317, *and by Chitty's Criminal Law, Vol.* 2, *page* 476. We must suppose that it was this " general definition," or one similar, which was given by the Court in his charge to the jury. The idea conveyed by this definition may have become clear and certain to the Student of criminal law, but to one who received it perhaps for the first time, and is required to make an application of it, without the light of the commentaries which have been expended upon it, and the judicial interpretation which it has received, it must to say the least lead to some embarrassment and doubt. It has been the desire of legislators to rid the Statutes of technical terms, and by supplying their places with words in general use, to make them intelligible to all classes of citizens : It is the duty of the Courts to lend their aid to this result, and when the Legislature have finished a lucid definition, it should be adhered to, and not mystified by a return to language which they have signified their intention should be abolished in the administration of justice.

The counsel for the Defendant requested the Court to charge the jury on the defence of insanity, in substance, that if they,

upon the evidence should entertain a reasonable doubt of the sanity of the Defendant at the time of the commission of the assault, they were bound to acquit; other requests on this branch of the defence were made by the prisoner's counsel, but the main idea is embodied in the above.

The Court refused, but charged "That the plea of insanity is one for the Defendant to establish; that the sanity of mankind being the rule, the burden of proof is on the Defendant, to show that an exception exists in his case. That if the Defendant be acquitted on that ground, it must be so stated in the verdict." This embodies the pith of the charge on this point, and it was excepted to by the Defendant.

The defence relies much upon the case of the *People vs. McCann*, 15 *How. P. R.* 503, to sustain their view of this question. The opinion of Justice Brown in that case in the Court of Appeals of New York, is certainly one of great ability, and goes the full length asked on the part of the prisoner here. That case holds that the sanity of the prisoner at the time of the commission of the act being as much a necessary ingredient of the crime as the killing itself, it becomes the duty of the prosecution to establish it as one of the facts of the case, and denies that the burden of proof lies with the defence to prove the insanity which it sets up to excuse the homicide. This view has not been the accepted one previous to this case, and the authorities cited by the Court, clearly prove that both in England and America, the rule has never obtained to the extent claimed by that case, but has in England been held to be exactly the reverse. *McNaughton's case*, 47 *Eng. Com. Law Rep.* 129

The opinion of Justice Brown loses much of its force of reasoning under the searching criticism it receives in the charge of Judge Gould to the jury in the same case on the new trials awarded by the Court of Appeals, and although it will be the law of New York, the reasoning unsupported, but on the contrary controverted by the weight of authority, is insufficient to induce me to adopt it as the safer and better rule.

The Statutes of Minnesota by a peculiar provision, relieve us from any doubt concerning the law in this State on the subject of where the burthen of proof rests in proving the plea of

insanity.   *On page* 570, *Revised Statutes, Sec.* 259, it is pro-
vided  " that if the defence to an indictment be the insanity of
the Defendant, the jury must be instructed·if they acquit him
on that ground, to state that fact in their verdict. "

It might be possible to place on this section the construction
that the fact to be stated in the verdict, is *that they acquit on
the ground of insanity,* and not positively the fact *that he is
insane,* about which latter fact, it might be contended under the
theory of the defence, the jury entertained "reasonable doubts,"
notwithstanding the acquittal ; but the Statute by another pro-
vision, *R. S. page* 562, *Sec.* 211, fully explains its meaning,
and precludes the idea that there is to be any doubt in the
minds of the jury about the insanity of the Defendant when
they acquit on that ground, *Sec.* 211, "when ,any person in-
dicted for an offence shall on trial be acquitted by the jury by
reason of insanity, the jury in giving their verdict of not guilty,
shall state that it was given for such cause, and thereupon if
the discharge or going at large *of such insane person* shall be
considered by the Court manifestly *dangerous to the peace
and safety of the community, the Court may order him to be
committed to prison, " &c.

The Statute very sensibly declares that when a jury is called
upon to acquit a prisoner of a crime on the ground that he was
insane, they shall not acquit him of the one without convict-
ing him of the other, so that the Court, if it is of the opinion
that the insanity is continuing, may dispose of his person with-
out further inquiry.  The Court committed no error in the
charge it gave on this branch of the defence, whatever may be
the law in the absence of statutory provision, but a new trial
should be awarded on the other ground.