**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1511**

Carlos Heard, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed June 10, 2024**
**Affirmed**
**Bratvold, Judge**

Hennepin County District Court
File No. 27-CR-10-34107

Cathryn Middlebrook, Chief Appellate Public Defender, Gina D. Schulz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam Petras, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Johnson, Judge; and Cleary, Judge.[*]

**SYLLABUS**

Assuming the *Teague* standard applies to state statutory and substantive law, neither *State v. Coleman*, 957 N.W.2d 72 (Minn. 2021), nor *State v. Noor*, 964 N.W.2d 424 (Minn. 2021), announced new rules of law concerning the mental-state element of third-degree

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

depraved-mind murder under Minn. Stat. § 609.195(a) (2020), and thus, they do not apply retroactively to convictions that were final when *Coleman* and *Noor* were announced.

## OPINION

**BRATVOLD**, Judge

Over ten years ago, in 2011, the district court convicted appellant Carlos Heard of third-degree depraved-mind murder under Minn. Stat. § 609.195(a) (2004),[1] after Heard killed his brother as they struggled over a gun. In 2023, Heard petitioned for postconviction relief, arguing that his third-degree murder conviction must be reversed under the Minnesota Supreme Court's 2021 decisions in *Coleman* and *Noor*. The district court refused to apply these decisions to Heard's case, reasoning that *Coleman* and *Noor* were not new interpretations of law, and denied Heard's petition.

Heard appeals the district court's order denying relief and argues that his petition is not barred by the timing and procedural limitations for bringing a postconviction petition for two reasons. First, he argues that he is entitled to postconviction relief under the exception for new interpretations of law and that *Coleman* and *Noor* apply retroactively to his conviction. Second, in the alternative, Heard contends that he is entitled to postconviction relief under the interests-of-justice exceptions. He argues that, even if *Coleman* and *Noor* did not announce new rules of law, the district court erred because it did not properly apply the old rules of law that *Coleman* and *Noor* discussed. The state contends that Heard's petition is untimely and procedurally barred; the rules of law stated

---

[1] Minn. Stat. § 609.195(a) has not been amended since Heard was convicted.

2

in *Coleman* and *Noor* are old, not new; and the interests-of-justice exceptions do not apply. The state alternatively argues that Heard's claim lacks merit.

We begin by considering the timing and procedural limitations for postconviction petitions and conclude, as Heard appears to concede, that his postconviction petition is untimely unless he can prove an exception applies. We then consider whether Heard has met his burden of proof for the new-interpretation-of-law exception. Assuming the *Teague* standard applies,[2] we determine that *Coleman* and *Noor* did not announce new rules of law. Finally, we consider whether Heard has proved the interests-of-justice exceptions. While Heard is correct that the old rules restated in *Coleman* and *Noor* apply to his conviction, we reject the argument that his petition should be heard in the interests of justice. We conclude that Heard's petition is untimely and that no exception applies. Thus, we affirm the district court's decision to deny Heard's postconviction petition.

**FACTS**

In 2011, following a jury trial, the district court convicted Heard of two counts of murder—(1) the third-degree murder of his brother, Jermaine, under Minn. Stat. § 609.195(a) and (2) the second-degree murder of Leroy Kennedy under Minn. Stat. § 609.19, subd. 1(1) (2004). *State v. Heard*, No. A11-1628, 2012 WL 3263775, at *1 (Minn. App. Aug. 13, 2012), *rev. denied* (Minn. Oct. 24, 2012). According to evidence elicited at trial, Heard fatally shot his brother as they struggled over a gun near a Minneapolis alley; Heard then intentionally shot Kennedy. *Id.* at *1-2. The state's

---

[2] *Teague v. Lane*, 489 U.S. 288 (1989) (adopting a test for determining when a new rule of law applies retroactively to convictions that were final when the new rule was announced).

3

witnesses testified that Kennedy owed money to Jermaine and that the brothers planned to confront Kennedy in the alley, but once in the alley, the brothers disagreed and Heard shot Jermaine and Kennedy. *Id.* The district court sentenced Heard to consecutive sentences of 180 and 313 months in prison for his third- and second-degree murder convictions, respectively. *Id.* at *1. Heard filed a direct appeal, this court affirmed both convictions, and the Minnesota Supreme Court denied review on October 24, 2012. *Id.* at *6. Heard did not petition the United States Supreme Court for a writ of certiorari, so his convictions became final 90 days after that, on January 22, 2013. *See* Sup. Ct. R. 13(1) (setting the 90-day deadline for petitioning for a writ of certiorari with the Supreme Court).

We are considering Heard's fifth postconviction appeal. We briefly discuss each of the previous petitions. In 2014, Heard petitioned for postconviction relief. *Heard v. State*, No. A14-1578, 2015 WL 1758005, at *1 (Minn. App. Apr. 20, 2015). The district court denied his petition, determining that his claims were barred by *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976).[3] *Id.* This court affirmed, concluding that *Knaffla* barred many of his claims and that his ineffective-assistance claim lacked merit. *Id.* at *1-2.

Heard filed a second petition for postconviction relief. *Heard v. State*, No. A20-0672, 2020 WL 7490504, at *1 (Minn. App. Dec. 21, 2020). The district court denied his petition, determining that his claims were *Knaffla*-barred, and Heard did not appeal. *Id.* Heard then moved to dismiss for lack of personal and subject-matter jurisdiction, which

---

[3] The supreme court in *Knaffla* held that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." 243 N.W.2d at 741.

4

the district court treated as a third petition for postconviction relief. *Id.* The district court denied Heard's third petition as *Knaffla*-barred, and he did not appeal. *Id.* Heard filed a fourth petition for postconviction relief. *Id.* The district court denied his petition, determining that his claims were *Knaffla*-barred and failed on their merits, and this court affirmed. *Id.* at *1, *3.

The Minnesota Supreme Court decided *Coleman* on March 31, 2021, 957 N.W.2d at 72, and it decided *Noor* on September 15, 2021, 964 N.W.2d at 424. On March 27, 2023, within two years of the *Coleman* decision, Heard filed a fifth petition for postconviction relief. He argued that *Coleman* and *Noor* applied retroactively to his conviction and that, under the rules announced in *Coleman* and *Noor*, the evidence was insufficient to support his conviction for third-degree depraved-mind murder because the state failed to prove the requisite act and mental state and the particular-person exclusion applied. The district court denied Heard's petition after determining that *Coleman* and *Noor* did not apply retroactively to Heard's conviction, reasoning that neither decision announced a new rule of law. The district court did not specifically address the parties' arguments on the timing and procedural requirements for Heard's petition.

Heard appeals.

## ISSUE

Did the district court err by denying postconviction relief after determining that neither *Coleman* nor *Noor* announced or restated a rule of law that applies to Heard's third-degree murder conviction?

**ANALYSIS**

Appellate courts generally review a district court's denial of postconviction relief for an abuse of discretion. *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017). "A [district] court abuses its discretion when it has exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Id.* (quotation omitted). Legal determinations are reviewed de novo. *Id.* Whether a rule of law "applies retroactively to convictions that were final when the rule was announced is a legal question that [appellate courts] review de novo." *Johnson v. State*, 916 N.W.2d 674, 681 (Minn. 2018).

A petition for postconviction relief is subject to timing and procedural limitations, including a two-year statutory time limit for filing a petition, Minn. Stat. § 590.01, subd. 4(a) (2022), and a procedural bar rejecting claims that were raised or could have been raised on direct appeal or in a previous postconviction petition, *Hooper v. State*, 838 N.W.2d 775, 787 (Minn. 2013); *Knaffla*, 243 N.W.2d at 741. The parties appear to agree that exceptions to these rules must apply for Heard's postconviction petition to be considered on its merits. Heard filed this postconviction petition well after the two-year limitations period had expired for filing a postconviction petition, and his other four petitions have challenged his third-degree murder conviction.

Thus, we consider whether Heard's claim satisfies either of the two asserted exceptions to the timing and procedural limitations for postconviction relief. *See Gilbert v. State*, 2 N.W.3d 483, 488-89 (Minn. 2024) (holding that the district court abused its discretion by failing to determine whether appellant's postconviction petition was

6

procedurally barred under *Knaffla*, and then determining that the petition was *Knaffla*-barred).

### A. Heard does not overcome the two-year statutory time bar under the new-interpretation-of-law exception.

A district court may consider a petition filed after the two-year statutory time limit if any one of five exceptions applies. Minn. Stat. § 590.01, subd. 4(b) (2022). "Any petition invoking an exception . . . must be filed within two years of the date the claim arises." *Id.*, subd. 4(c) (2022). Heard contends that the exception for new interpretations of law applies because his petition alleged that *Coleman* and *Noor* announced "a new interpretation of law that is retroactively applicable to his case." *See id.*, subd. 4(b)(3) (providing that a court may hear a petition for postconviction relief if the "petitioner asserts a new interpretation of federal or state constitutional or statutory law by either the United States Supreme Court or a Minnesota appellate court and the petitioner establishes that this interpretation is retroactively applicable to the petitioner's case").

To determine whether a rule of federal constitutional law applies retroactively to criminal convictions that are final when the rule is announced, Minnesota courts apply the standard adopted by the United States Supreme Court in *Teague*. *Danforth v. State*, 761 N.W.2d 493, 498-500 (Minn. 2009) (adopting the *Teague* standard in Minnesota). We are unaware of any binding precedent holding that the *Teague* standard also applies to determine whether a new rule of state statutory or substantive law applies retroactively to convictions that are final when the rule is announced. The parties did not raise or brief this issue, and both parties applied the *Teague* standard.

7

When faced with a similar situation, the supreme court assumed, without deciding, that *Teague* "provides the applicable framework." *State v. Meger*, 901 N.W.2d 418, 422 n.4 (Minn. 2017). We similarly assume, without deciding, that the *Teague* standard applies to our analysis of the new-interpretation-of-law exception. *See Odegard v. State*, 767 N.W.2d 472, 475 (Minn. App. 2009) (applying the *Teague* standard to determine whether a Minnesota Supreme Court decision articulated a new rule of constitutional criminal procedure that applied retroactively to appellant's conviction and stating that "the supreme court prefers a uniform retroactivity standard").

The Minnesota Supreme Court has had several occasions to explain and apply the *Teague* standard, which has several parts. The first part is "whether the rule . . . is new, or whether it is merely a predictable extension of a pre-existing doctrine." *Meger*, 901 N.W.2d at 422 (quotation omitted). "Old rules" apply on direct and collateral review. *Id.* (quotation omitted). The second part is retroactivity; "a new rule of law generally does not apply retroactively to final convictions" unless one of two exceptions applies. *Johnson*, 916 N.W.2d at 681. A new rule applies retroactively only if it "(1) is substantive, as compared to procedural, or (2) is a new 'watershed' rule of criminal procedure." *Id.*

Starting with the first part of the *Teague* standard, we note that a judicial opinion announces a new rule of law if "it breaks new ground or imposes a new obligation" on the government. *Teague*, 489 U.S. at 301. And "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* "[I]t is not enough that a holding is logically an extension of some precedent, as that is true of virtually all recently announced rules." *Meger*, 901 N.W.2d at 422 (quotation omitted).

8

Instead, "the test is whether reasonable jurists hearing petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to rule in his favor." *Id.* at 423 (quotations omitted). An opinion announces a new rule if the outcome "was susceptible to debate among reasonable minds." *Id.* (quotation omitted). On the other hand, a case restates an old rule when "it is merely an application of the principle that governed a prior decision to a different set of facts." *Id.* (quotation omitted).

Heard contends that *Coleman* and *Noor* announced new rules of law that apply retroactively to his conviction, and therefore, he is entitled to relief under the new-interpretation-of-law exception. When we consider each decision under the *Teague* standard, however, neither passes the first part of the test.

**1.     *Coleman* did not announce a new rule of law.**

Heard argues that *Coleman* announced a new rule because "it invalidated the pattern jury instruction that had been used in third-degree murder cases since before Heard's trial." The state argues that, by "[c]larifying language in past precedent," *Coleman* did not announce a new rule because it merely "provided guidance on already-established law." (Emphasis omitted.)

In *Coleman*, the supreme court clarified the mental state required for third-degree depraved-mind murder. 957 N.W.2d at 80. The state charged Coleman under Minn. Stat. § 609.195(a) (2020) with murder while "perpetrating an act eminently dangerous to others and evincing a depraved mind, without regard to human life." *Id.* at 74 (quotation omitted). During trial, the state offered evidence that Coleman, who was intoxicated, drove a snowmobile "straight through [an] icehouse" on South Chisago Lake, killing an

9

eight-year-old boy and injuring the boy's father. *Id.* Coleman testified and admitted that, just before the crash, he was reaching speeds of 58 miles per hour and that he had an alcohol concentration of more than twice the legal limit. *Id.* at 75. The district court instructed the jury on the required mental state using the pattern jury instruction for third-degree murder, which included the phrase, "committed in a *reckless or wanton manner* with the knowledge that *someone may be killed.*" *Id.*; *see* 10 *Minnesota Practice*, CRIMJIG 11.38 (2015).

On appeal, Coleman argued that the jury instruction was plain error, citing existing caselaw. *Id.* at 75-76. This court affirmed Coleman's conviction after determining that, although the jury instruction was erroneous, it was not plain error. *Id.* at 76. The supreme court also affirmed, first establishing the mental state required for third-degree depraved-mind murder, then concluding that the pattern jury instruction was erroneous, and finally reasoning that the error did not affect Coleman's substantial rights. *Id.* at 77-83.

In articulating the proper mental state for third-degree murder, the supreme court reviewed caselaw discussing recklessness—*State v. Lowe*, 68 N.W. 1094 (Minn. 1896), *State v. Weltz*, 193 N.W. 42 (Minn. 1923), and *State v. Barnes*, 713 N.W.2d 325 (Minn. 2006). *Id.* at 78-80. The supreme court acknowledged that the recklessness language used in those opinions was dicta, "ill-advised," and "led some to believe that the statute requires a *reckless act*, as opposed to a *mental state of reckless disregard of life*," resulting in "ongoing confusion regarding the mental state required for third-degree depraved mind murder." *Id.* at 78-79. The supreme court ultimately observed: "[O]ur precedents show that we have established no clear directive as to the mental state required for third-degree depraved mind murder." *Id.* at 80.

The supreme court then explained that "the mental-state element for third-degree depraved mind murder requires a showing that the eminently dangerous act was committed with a mental state of *reckless disregard of human life*." *Id.* Accordingly, the supreme court held that the mental-state element of third-degree murder is met "when based on the surrounding circumstances one can infer that the defendant was indifferent to the loss of life that the defendant's eminently dangerous act could cause." *Id.*

The supreme court noted that its clarification of the required mental state reflected precedent: "Our articulation of the mental state required for third-degree depraved mind murder is consistent with our precedent that emphasizes the need to judge a defendant's mental state based on the attending circumstances." *Id.* at 81 (citing *Weltz*, 193 N.W. at 42). Thus, the supreme court determined that the pattern jury instruction given at Coleman's trial "materially misstated the law." *Id.* The supreme court explained that the pattern instruction improperly "attaches the recklessness component to the act itself, and allows for conviction based on an impermissibly low risk of death." *Id.* Still, the supreme court rejected Coleman's argument that the error required a new trial, reasoning that there is no plain error without prejudice and that Coleman "failed to establish that the error affected his substantial rights." *Id.*

Heard argues that, even though the rule of law announced in *Coleman* adheres to precedent, it is a new rule of law because, before *Coleman* was decided, "[t]he consensus in the legal community—as expressed by the pattern jury instruction—was wrong."[4]

---

[4] Heard relies on *Meger*, in which the supreme court held that *State v. Her*, 862 N.W.2d 692 (Minn. 2015), announced a new rule of law. 901 N.W.2d at 425. In *Her*, the supreme

11

Heard's argument is not persuasive. First, pattern instructions are "not precedential or binding" legal authority. *State v. Gunderson*, 812 N.W.2d 156, 162 (Minn. App. 2012) (quotation omitted). Even more to the point, *Coleman* rejected only one sentence in a pattern jury instruction. The supreme court's rejection of the pattern jury instruction, therefore, did not overrule precedent. Second, the supreme court determined that the pattern jury instruction used in Coleman's trial "misconstrue[d]" precedent and relied on dicta. *Coleman*, 957 N.W.2d at 78-79. As the supreme court explained, its ruling in *Coleman* articulated the mental-state element of third-degree murder and was "consistent with our precedent." *Id.* at 81. We conclude that *Coleman* did not announce a new rule of law because it clarified the mental-state element based on existing precedent.

---

court held that the prior-conviction exception does not apply to an offender's risk level and therefore that the determination of a defendant's status as a risk-level-III offender must be admitted by the defendant or found by a jury before a district court may impose a ten-year period of conditional release for a conviction for failing to register as a predatory offender. 862 N.W.2d at 696-700; *see Blakely v. Washington*, 542 U.S. 296, 301 (2004) (providing for a prior-conviction exception to the general rule that facts that increase the penalty for a conviction must be admitted by the defendant or found by a jury). Before the supreme court decided *Her*, caselaw directed district courts to do a "fact-specific analysis" to determine whether the prior-conviction exception applied to a fact beyond the recognition of a prior conviction, which was "consistent with then-existing precedent." *Meger*, 901 N.W.2d at 424. The supreme court in *Meger* concluded that the rule of law announced in *Her* was new based on the fact-specific analysis embraced by previous caselaw. *Id.* at 424-25. In short, the holding in *Her* was susceptible to debate among reasonable minds before the supreme court issued its opinion in *Her*. *Id.* at 424. In contrast, *Coleman* clarified the mental-state element based on precedent. 957 N.W.2d at 81. We conclude that the confusion in some caselaw that preceded *Coleman* does not amount to the reasonable debate that preceded *Her*.

## 2. *Noor* did not announce a new rule of law.

Heard argues that *Noor* announced a new rule of law because it expressly overruled *State v. Mytych*, 194 N.W.2d 276 (Minn. 1972). The state argues that *Noor* did not announce a new rule because *Mytych* was "an outlier in Minnesota caselaw."

In *Noor*, the supreme court considered the sufficiency of the evidence on the mental-state element of a law-enforcement officer's conviction for third-degree depraved-mind murder. 964 N.W.2d at 427.[5] The supreme court reversed after determining that "conduct that is directed with particularity at the person who is killed cannot evince a depraved mind, without regard for human life." *Id.* (quotation omitted). The supreme court reviewed the evidence and concluded that "the only reasonable inference" is that Noor "directed his single shot with particularity" at a city resident who approached the squad car Noor occupied with his partner. *Id.*

The supreme court stated that its decision "reaffirm[ed] our precedent" and "confirm[ed]" the particular-person exclusion for the mental-state element of third-degree depraved-mind murder. *Id.* at 433. The supreme court explained that the "particular-person exclusion is simply another way of saying that the mental state for depraved-mind murder is one of general malice." *Id.* The supreme court first examined the mental-state element of third-degree murder as stated in *Bonfanti v. State*, 2 Minn. 123, 128, 2 Gil. 99, 104 (1858), which "implicitly recognized the distinction between the mental state of *general*

---

[5] Noor did not challenge his conviction for second-degree manslaughter. *Id*.

13

malice and the mental state of *particular* malice, where the defendant's actions are directed at a specific person." *Id.* at 431 (citations omitted).

*Noor* then traced the supreme court's application of a general-malice mental state for depraved-mind murder over decades of precedent. "In roughly 20 cases spanning the 163 years since *Bonfanti* was decided," the supreme court has "repeatedly reaffirmed that depraved-mind murder is a general malice crime." *Id.* Because the supreme court's caselaw "confirm[ed] that the mental state required for depraved-mind murder . . . is one of general malice," the same precedent established that the requisite mental state "cannot exist when the defendant's actions are directed with particularity at the person who is killed." *Id.* at 433.

Heard is correct that the supreme court expressly overruled *Mytych*, though only after finding a "compelling reason" to do so. *Id.* at 435. In *Mytych*, the supreme court affirmed a conviction for third-degree depraved-mind murder despite evidence that Mytych shot the victim with particularity. 194 N.W.2d at 283. In *Noor*, the supreme court described *Mytych* as "clearly and manifestly wrong when it was decided," adding that "it remains clearly wrong today." *Noor*, 964 N.W.2d at 435. The supreme court explained that *Mytych* was poorly reasoned, departed from established precedent, conflicted with cases decided after it, and created confusion. *Id.* at 435-36.

When a court overrules a prior decision, it may create a new rule of law. For example, in *Whorton v. Bockting*, the United States Supreme Court held that *Crawford v. Washington*, 541 U.S. 36 (2004), announced a new rule because *Crawford* was "flatly inconsistent with the prior governing precedent, which *Crawford* overruled." *Whorton v.*

14

*Bockting*, 549 U.S. 406, 416 (2007). By contrast, when *Noor* overruled *Mytych*, the supreme court reaffirmed a long line of precedential caselaw and explained that *Mytych* did not follow governing precedent. *Noor*, 964 N.W.2d at 433, 436.

Because *Noor* relied on decades of established precedent to overrule *Mytych*, and because *Mytych* was an anomaly, we conclude that *Noor* did not announce a new rule of law. In sum, we conclude that, assuming the *Teague* standard applies to state statutory and substantive law, neither *Coleman* nor *Noor* announced new rules of law. Thus, the new-interpretation-of-law exception does not save Heard's untimely petition.

**B.     Heard does not overcome the two-year statutory time bar or the *Knaffla* bar under the interests-of-justice exceptions.**

Heard alternatively contends that if *Coleman* and *Noor* restated old rules of law, the district court erred by not applying those rules in assessing the sufficiency of the evidence of his mental state. Heard points out that, under the *Teague* standard, old rules of law "apply both on direct and collateral review." *Campos v. State*, 816 N.W.2d 480, 488 (Minn. 2012) (quotation omitted). Heard acknowledges, however, that he must overcome the timing and procedural limitations for postconviction relief, and he invokes a second exception to the two-year statutory time bar: the interests-of-justice exception.

This exception provides that a court may hear an otherwise untimely petition if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5). The interests-of-justice exception relates to the reason the petition was filed after the two-year time limit, not the substantive claims in the petition; in other words, "the interests-of-justice exception is

15

triggered by an injustice that *caused* the petitioner to miss the primary deadline in subdivision 4(a), not the *substance* of the petition." *Sanchez v. State*, 816 N.W.2d 550, 557 (Minn. 2012).

The second procedural limitation is the *Knaffla* bar, which also has an interests-of-justice exception. Under *Knaffla*, "if a postconviction claim was raised, known, or should have been known when a direct appeal was filed, that claim is procedurally barred and will not be considered in a later petition for postconviction relief." *Griffin v. State*, 883 N.W.2d 282, 286 (Minn. 2016). A court may consider an otherwise *Knaffla*-barred claim "if (1) the defendant presents a novel legal issue or (2) the interests of justice require the court to consider the claim." *Hooper*, 838 N.W.2d at 787 (quotation omitted). Heard does not contend that his petition presents a novel legal issue but, as mentioned, claims that his petition satisfies the interests of justice. "Claims decided in the interests of justice require that the claims have substantive merit and that the defendant did not deliberately and inexcusably fail to raise the issue on direct appeal." *Deegan v. State*, 711 N.W.2d 89, 94 (Minn. 2006) (quotations omitted). The burden is on the petitioner to establish the applicability of an exception. *Sanders v. State*, 628 N.W.2d 597, 600 (Minn. 2001).

Thus, Heard must meet his burden to demonstrate the interests-of-justice exceptions apply to avoid the statutory time bar and the *Knaffla* bar. Heard contends that, at the time he filed his direct appeal and earlier postconviction petitions, "the doctrine of third-degree depraved-mind murder looked very different from the version that emerged in 2021." This argument is not convincing in light of our conclusion that *Coleman* and *Noor* did not announce new rules of law because both opinions relied on ample precedent.

16

The state urges us to conclude that Heard has not met his burden under the interests-of-justice exceptions. We agree with the state. The interests of justice provide a petitioner with an exception to the two-year statutory time bar only if the injustice relates to the reason the petition was filed after the time limit and the injustice caused them "to miss the primary deadline." *Sanchez*, 816 N.W.2d at 557. Similarly, the interests of justice provide a petitioner with an exception to the *Knaffla* bar only if the claim has merit and the petitioner "did not deliberately and inexcusably fail to raise the issue on direct appeal." *Deegan*, 711 N.W.2d at 94.

Heard's petition does not demonstrate that the interests-of-justice exception for either the statutory time or *Knaffla* bars applies. Despite decades of caselaw on the mental-state element of depraved-mind murder, as discussed in *Coleman* and *Noor*, Heard did not discuss the particular-person exclusion or challenge the sufficiency of the evidence for the mental-state element in his direct appeal or in any of his four prior postconviction petitions.[6] And neither did Heard rely on the *Mytych* opinion, which the supreme court overruled in *Noor*, in either his direct appeal or his postconviction petitions. We note that, during Heard's trial, at the close of the state's case, Heard's attorney moved for a judgment

---

[6] We have briefly reviewed the underlying proceedings to determine what issues Heard raised in previous challenges to his conviction. Heard's direct appeal raised two related issues and did not challenge the evidence related to the mental-state element; nor did his brief discuss the particular-person exclusion. Heard's direct appeal argued that the district court abused its discretion by ruling that Heard could be impeached with a prior conviction for manslaughter and that the error was not harmless. 2012 WL 3263775, at *3. Also, in his first postconviction petition, Heard argued, among other issues, that his appellate counsel failed to raise claims and provided ineffective assistance of counsel under the Sixth Amendment. 2015 WL 1758005, at *2. Heard's ineffective-assistance claim did not raise the mental-state element or the particular-person exclusion.

17

of acquittal and asserted the particular-person exclusion. Although the state cited *Mytych* in response and the district court denied Heard's motion, the district court nevertheless instructed the jury on the particular-person exclusion for third-degree murder, stating that Heard's "act . . . may not be specifically directed at the particular person whose death occurred."

In short, Heard does not provide a reason that unjustly caused him to miss the two-year statutory deadline to challenge the mental-state element or to assert the particular-person exclusion that he urges in his fifth postconviction petition. And Heard does not prevail on the argument that he should be excused under *Knaffla* for failing to raise the mental-state element or the particular-person exclusion. Similar to the appellant in *Gilbert*, Heard "has not shown extenuating or unforeseen circumstances that make his failure to bring this claim at an earlier stage excusable." 2 N.W.3d at 489.

We conclude that Heard's petition fails to overcome the statutory time bar and procedural limitations for postconviction relief under the interests-of-justice exceptions. Because no exception saves Heard's untimely postconviction petition, we need not consider the merits. Thus, the district court did not abuse its discretion in denying the petition.

## DECISION

Heard's postconviction petition is untimely unless one of the two exceptions he identified applies to his case. For the first exception in Minn. Stat. § 590.01, subd. 4(b)(3)—new interpretations of law that apply retroactively—we assume that the *Teague* standard applies and determine that *Coleman* and *Noor* merely reaffirmed existing

rules of law and did not announce new rules of law. Heard therefore did not demonstrate the first exception applies. We also conclude that Heard did not demonstrate that the interests-of-justice exception to the time bar in subdivision 4(b)(5) or to *Knaffla* applies. Accordingly, Heard's petition is untimely and we affirm the district court's decision to deny Heard's postconviction petition.

**Affirmed.**