**STATE of Minnesota, Appellant,**

v.

**Brian William MEGER, Respondent.**

A15-1823

Supreme Court of Minnesota.

Filed: September 20, 2017

Lori Swanson, Minnesota Attorney General, Saint Paul, Minnesota, and Ronald Hocevar, Scott County Attorney, Todd P. Zettler, First Assistant Scott County Attorney, Shakopee, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant State Public Defender, Saint Paul, Minnesota, for respondent.

## OPINION

MCKEIG, Justice.

In *State v. Her*, 862 N.W.2d 692, 696-700 (Minn. 2015), we held that the fact that a defendant was a risk-level-III offender at the time of the offense must be admitted by the defendant or found by a jury beyond a reasonable doubt before a court may impose a 10-year period of conditional release as part of a sentence for failing to register as a predatory offender. The issue here is whether *Her* applies retroactively to sentences that were imposed and became final before *Her* was decided. In a motion to correct his sentence under Minn. R. Crim. P. 27.03, subd. 9, respondent Brian William Meger argued that his 10-year conditional-release term was illegal because *Her* applied retroactively to his sentence. The district court granted Meger's motion and vacated the conditional-release term. The court of appeals affirmed. Because we conclude that *Her* announced a new rule of constitutional criminal procedure that does not apply to the collateral review of Meger's sentence, we reverse.

## FACTS

Respondent Brian William Meger was required to register as a predatory offender because of a conviction of attempted first-degree criminal sexual conduct in 1995. *See* Minn. Stat. § 243.166, subd. 1b (2016). In 2005, the State charged Meger with failing to register as a predatory offender. Minn. Stat. § 243.166, subds. 3(b), 5 (2016). A person convicted of failing to register as a predatory offender is subject to a 10-year period of conditional release if the offender was a risk-level-III offender at the time of the offense.[1] *See* Minn. Stat. § 243.166, subd. 5a (2006). Although the probable cause portion of the complaint stated that Meger was a risk-level-III offender, the complaint made no reference to conditional release or Minn. Stat. § 243.166, subd. 5a.

Following a plea agreement, Meger pleaded guilty to failure to register as a predatory offender in exchange for a 20-month sentence, a downward durational departure. On September 7, 2006, the district court accepted Meger's guilty plea and sentenced him to 20 months in prison. In January 2007, the court received a letter from the Minnesota Department of Corrections (DOC) inquiring whether the court intended to add a 10-year conditional-release term to Meger's sentence based on Meger's risk-level-III status, Minn. Stat. § 243.166, subd. 5a. In an order signed on January 29, 2007, the district court amended Meger's sentence by adding a 10-year conditional-release term.

Meger served his 20-month prison sentence, and then remained in prison for approximately 6 additional years because the State could not find appropriate housing for him on conditional release. In June 2014, Meger filed a motion to correct his sentence under Minn. R. Crim. P. 27.03, subd. 9, requesting that his conditional-release term be vacated because a jury had not found that he was a risk-level-III offender at the time he failed to register. The district court denied the motion. Two weeks later, we held in *State v. Her*, 862 N.W.2d 692, 696-700 (Minn. 2015), that the Sixth Amendment prohibits a court from imposing a 10-year conditional-release term upon a predatory offender under Minn. Stat. § 243.166, subd. 5a, unless the offender admits or a jury finds that he or she was a risk-level-III offender at the time of the failure to register. Meger immediately moved for reconsideration based on our decision in *Her*.

The district court granted Meger's motion to reconsider and his motion to correct his sentence. The court applied *Her* retroactively, and determined that the conditional-release term was unlawful under *Her* because Meger's risk-level status was based solely on "unestablished, extra-judicial facts" contained in a DOC letter provided after he had been sentenced. The court did not impanel a sentencing jury given the "far from ideal" procedural practices in Meger's case, the substantial time Meger had already served in prison during his conditional-release term, and concerns of complications caused by double jeopardy. The district court vacated Meger's conditional-release term and imposed his original 20-month sentence, the maximum sentence contemplated at the time of the plea agreement. Because Meger had already served that sentence, the district court ordered his immediate release from custody.

The court of appeals affirmed, holding that *Her* applies retroactively because it

---

1. When a predatory offender is released from confinement, a Department of Corrections End-of-Confinement Review Committee as-sesses the public risk to reoffend and assigns a risk level to each offender ranging from I to III. *See* Minn. Stat. § 244.052, subd. 3 (2016).

was "merely an application of the Sixth Amendment jury-trial right that governed the Minnesota Supreme Court's previous decisions in" *State v. Jones*, 659 N.W.2d 748 (Minn. 2003), and *State v. Grossman*, 636 N.W.2d 545 (Minn. 2001), and U.S. Supreme Court Sixth Amendment precedent. *State v. Meger*, No. A15-1823, 2016 WL 3961841, at *3 (Minn. App. July 25, 2016).

Relying on *Reynolds v. State*, 874 N.W.2d 257 (Minn. App.), *aff'd*, 888 N.W.2d 125 (Minn. 2016), which was pending before us at the time, the court of appeals held that the district court did not err in construing Meger's motion as a motion to correct his sentence under Minn. R. Crim. P. 27.03, subd. 9. *Meger*, 2016 WL 3961841, at *4. In addition, the court of appeals concluded that the State "ha[d] limited itself to arguing for only plea with-drawal as a remedy because it failed to brief or argue for any other remedy that the postconviction court could have granted Meger," and that "the [district] court did not abuse its discretion in vacating Meger's conditional-release term and modifying his sentence to the maximum sentence allowable under the plea agreement." *Id.* at *4.

The State filed a petition for review. We granted review and stayed our consideration of this appeal, then lifted the stay after deciding *Reynolds v. State*, 888 N.W.2d 125 (Minn. 2016).[2]

## ANALYSIS

■ At issue is whether *Her* applies retroactively to Meger's amended sentence, which was final when *Her* was decided.[3] Meger filed a motion to correct his

---

**2.** In *Reynolds*, we held that a sentence that violates *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), is a sentence that is not authorized by law under Minn. R. Crim. P. 27.03, subd. 9, and that the 2-year statute of limitations that applies to postconviction petitions does not apply to motions brought under Rule 27.03, subdivision 9. 888 N.W.2d at 133-34.

**3.** Meger concedes that his case was final because it was not pending on direct review when we decided *Her* in 2015. In prior decisions involving the retroactive application of *Blakely*, we have referred to the date the defendant's conviction became final in our retroactivity analysis. *See State v. Hughes*, 758 N.W.2d 577, 579-82 (Minn. 2008); *State v. Losh*, 721 N.W.2d 886, 893-95 (Minn. 2006). We expressly stated that we did not need to "decide whether finality of the sentence, as opposed to finality of the conviction, is the touchstone for determining retroactive effect." *Hughes*, 758 N.W.2d at 581; *see also Losh*, 721 N.W.2d at 894. In both cases, the defendants could have challenged the upward durational departure, which was potentially subject to the rule announced in *Blakely*, in an appeal of their convictions. *See Hughes*, 758 N.W.2d at 581; *Losh*, 721 N.W.2d at 894-95.

Here, Meger could *not* have challenged the period of conditional release in an appeal of his conviction because the district court added the period of conditional release nearly 5 months after entering the judgment of conviction. Because Meger's case was final when *Her* was decided, regardless of whether we use the date that his conviction was final or the date that his amended sentence adding the conditional-release term was final, we assume without deciding that the finality of the sentence is the touchstone for determining the retroactive effect in this case and that Meger's amended sentence became final on April 29, 2007, when the time to file an appeal of his amended sentence would have expired. *See Campos v. State*, 816 N.W.2d 480, 488 n.6 (Minn. 2012) (concluding that because the defendant had "not file[d] a direct appeal, his conviction became final for retroactivity purposes when the time to file such an appeal had expired"); Minn. R. Crim. P. 28.02, subd. 2(3) ("A defendant may appeal as of right from any sentence imposed or stayed in a felony case."); Minn. R. Crim. P. 28.05, subd. 1 (stating that "[a]ny party appealing a sentence must file with the clerk of the appellate courts, within 90 days after judgment and sentencing" certain documents, including a notice of appeal).

sentence under Minn. R. Crim. P. 27.03, subd. 9, which authorizes a district court "at any time" to "correct a sentence not authorized by law." Meger argues that if our holding in *Her* applies retroactively to his amended sentence, his 10-year conditional-release term was not authorized by law because he did not admit, and a jury did not find, that he was a risk-level-III offender at the time that he failed to register. But Meger also acknowledges that if *Her* does not apply retroactively, his conditional-release term was lawful at the time and his Rule 27.03 motion should be denied.

■ Whether a rule of federal constitutional law applies retroactively to criminal convictions that were final when the rule was announced is a legal question that we review de novo. *Campos v. State*, 816 N.W.2d 480, 485 (Minn. 2012). In deciding the retroactive effect of a rule of federal constitutional law, we follow the retroactivity standards established in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[4] *Campos*, 816 N.W.2d at 488.

■ Under *Teague*, "we first ask whether the rule of federal constitutional criminal procedure is new, or whether it is merely a predictable extension of a pre-existing doctrine." *Campos*, 816 N.W.2d at 488 (citation omitted) (internal quotation marks omitted). "Old rules of federal con-

stitutional criminal procedure apply both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Id.* (citation omitted) (internal quotation marks omitted). Although a new rule may apply retroactively in collateral proceedings under two "narrow" exceptions, *id.*, Meger does not argue that either exception applies here. Thus, it is undisputed that Meger may benefit from our holding in *Her* only if *Her* was an "old rule," rather than a "new rule," under *Teague*.

■ "A Supreme Court 'holding constitutes a new rule within the meaning of *Teague* if it breaks new ground, imposes a new obligation on the States or the Federal Government, or was not dictated by precedent existing at the time the defendant's conviction became final.'" *Campos*, 816 N.W.2d at 489 (quoting *Graham v. Collins*, 506 U.S. 461, 467, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993)). A holding is "not so dictated [by precedent] ... unless it would have been 'apparent to all reasonable jurists.'" *Chaidez v. U.S.*, 568 U.S. 342, 347, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 528, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)). We have stated that it is not enough that a holding "is logically an extension of some precedent, as that is true of virtually all recently announced rules."

---

4. In *Danforth v. State*, we adopted *Teague* as the framework for considering whether to retroactively apply a new rule of federal constitutional criminal procedure to cases that became final before the announcement of the rule. 761 N.W.2d 493, 499 (Minn. 2009). Since then, we have applied *Teague* in cases addressing whether a rule of constitutional criminal procedure announced by the *U.S. Supreme Court* is retroactive. *See Chambers v. State*, 831 N.W.2d 311, 331 (holding that *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), did not apply retroactively to cases on collateral review), *over-*

*ruled by Montgomery v. Louisiana*, —— U.S. ——, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016); *Campos*, 816 N.W.2d at 482-83 (holding that *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), did not apply retroactively to cases on collateral review). Here, Meger asks us to retroactively apply a decision of *our court* announcing a rule of federal constitutional criminal procedure. Because the parties agree that *Teague* applies in this case, we assume, without deciding, that *Teague* provides the applicable framework here.

*State v. Houston*, 702 N.W.2d 268, 271 (Minn. 2005). Rather, the test is whether "reasonable jurists hearing petitioner's claim at the time his conviction became final 'would have felt compelled by existing precedent' to rule in his favor." *Graham*, 506 U.S. at 467, 113 S.Ct. 892 (quoting *Saffle v. Parks*, 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)). In other words, a decision announces a new rule if "the outcome . . . was susceptible to debate among reasonable minds." *Butler v. McKellar*, 494 U.S. 407, 415, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). The *Teague* doctrine serves to "validate[ ] reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Id.* at 414, 110 S.Ct. 1212.

■■■ A holding, however, does not pronounce a new rule under *Teague* if it is "merely an application of the principle that governed a prior decision to a different set of facts." *Chaidez*, 568 U.S. at 348, 133 S.Ct. 1103 (citation omitted) (internal quotation marks omitted). When a court simply "appl[ies] a general standard to the kind of factual circumstances it was meant to address," the court "will rarely state a new rule for *Teague* purposes." *Id.*

The State argues that *Her* is not retroactive because it created a new rule that does not apply to cases on collateral review. Citing three decisions by the court of appeals addressing whether a defendant is entitled to jury findings on his or her risk-level status, the State contends that "on the issue presented in this case, the unanimous decision of every appellate judge to consider this issue . . . demonstrates that this [c]ourt's decision in *Her* was not compelled by precedent."

In response, Meger contends that the court of appeals correctly concluded that *Her* is retroactive because it is an old rule that is "nothing more than an application of [the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004),] to the specific factual circumstances of the defendant in *Her*." We agree with the State.[5]

In *Her*, we held that the Sixth Amendment to the United States Constitution requires that, to impose a 10-year conditional-release term under Minn. Stat. § 243.166, subd. 5a, a predatory offender's risk level be either admitted by the offender or found by a jury beyond a reasonable doubt. 862 N.W.2d at 696-700. We based this decision on three cases of the United States Supreme Court: *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely*, and *Descamps v. U.S.*, 570 U.S. 254, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). *See Her*, 862 N.W.2d at 695-700.

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty

5. The analysis of the court of appeals in this case is incomplete. In *Her*, we held that a jury must determine the offender's risk level in order for a district court to impose a term of conditional release. 862 N.W.2d at 694. We reached this holding after first determining that the conditional-release term in the statute at issue exceeds the statutory maximum. *Id.* at 697. The court of appeals concluded that precedent compelled this holding. *Meger*, 2016 WL 3961841, at *3. We do not disagree, but that does not fully answer the retroactivity question. In *Her*, after holding that the conditional-release term exceeded the statutory maximum, we concluded that the facts necessary to support the imposition of the conditional-release term had to be found by the jury *unless* the prior-conviction exception applied. 862 N.W.2d at 697. We then went on to consider and reject application of the prior-conviction exception. *Id.* at 698-700. The question presented today is not whether the first part of our holding is retroactive; rather, it is whether *Her*'s rule that an offender's risk level must be found by a jury or admitted by the defendant is retroactive.

for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. In *Blakely*, the Supreme Court clarified that the relevant "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 542 U.S. at 303, 124 S.Ct. 2531. And in *Descamps*, the Supreme Court made clear that the prior-conviction exception is for "the recognition of a prior conviction" only. 570 U.S. 254, 133 S.Ct. at 2288. Together, these cases established that a judge may not increase the penalty for a crime beyond the statutory maximum based on facts not found by a jury or admitted by the defendant, except for the fact of a prior conviction alone.[6]

But the Supreme Court did not decide *Descamps* until 2013, six years after Meger's amended sentence became final. Thus, at the time Meger's amended sentence became final in 2007, the landscape of the Sixth-Amendment jury-trial-right jurisprudence in Minnesota was unlike the one today, and the scope of the prior-conviction exception was not as clear as it is today. On two previous occasions before *Descamps*, we had extended the prior-conviction exception to include facts beyond the mere recognition of a prior conviction; but we had also declined to do so in a third case. *See Her*, 862 N.W.2d at 698-99. Specifically, we held in *State v. Allen* that the recognition of the defendant's probation status fell within the prior-conviction exception because it "flowed directly from

the sentence for his prior conviction." 706 N.W.2d 40, 47-48 (Minn. 2005). That same year, we held in *State v. Henderson* that the determination of a pattern of criminal conduct did *not* fall within the prior-conviction exception because "the additional findings involved in the comparison and weighing of bad conduct go beyond the acceptable parameters of the recidivism exception." 706 N.W.2d 758, 762 (Minn. 2005). And one year later, we concluded in *State v. McFee* that the fact of a prior juvenile adjudication did not require jury fact-finding because a "comparison or weighing of bad conduct is not required to determine whether a defendant has a juvenile record." 721 N.W.2d 607, 618 (Minn. 2006) (citation omitted) (internal quotation marks omitted). These decisions, consistent with then-existing precedent, involved a fact-specific analysis of whether a fact beyond the recognition of a conviction could fall within the prior-conviction exception.

Given the fact-specific analysis in *Allen*, *Henderson*, and *McFee*, the question of whether the risk level assigned to an offender under Minn. Stat. § 244.052, subd. 3(e) (2016), falls within the prior-conviction exception was susceptible to debate among reasonable minds when Meger's case became final in 2007. Additionally, we had not addressed this question until we decided *Her*. *See* 862 N.W.2d at 696. Without the benefit of *Descamps* and *Her*, and considering our holdings in *Allen*, *Henderson*, and *McFee*, reasonable jurists at the time Meger's amended sentence became final would *not* have felt compelled

---

6. At the time Meger's amended sentence became final, we had applied these principles to mean that "for felonies other than first-degree murder, the presumptive sentence prescribed by the Minnesota Sentencing Guidelines is 'the maximum sentence a judge may impose solely on the basis of [the] facts reflected in the jury verdict or admitted by the defen-

dant.'" *State v. Shattuck*, 704 N.W.2d 131, 141 (Minn. 2005) (quoting *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531). We also had held that it violates a defendant's constitutional rights for a court, rather than a jury, to find the facts necessary to impose a conditional-release term. *See State v. Jones*, 659 N.W.2d 748, 752-54 (Minn. 2003).

by existing precedent to rule in his favor on the question of whether an offender's risk level falls within the prior-conviction exception. Accordingly, we conclude that *Her* is a new rule that is not retroactive to Meger's amended sentence. *See Butler*, 494 U.S. at 415, 110 S.Ct. 1212; *Houston*, 702 N.W.2d at 271.

■ "[F]or a sentence to be eligible for correction under Rule 27.03, subdivision 9, the sentence must have been illegal at the time it was imposed." *Reynolds v. State*, 888 N.W.2d 125, 133 (Minn. 2016). Because *Her* does not apply retroactively to Meger's amended sentence, Meger's period of conditional release was not unlawful at the time it was imposed. *See id.* (explaining that in a case that became final before a new rule of constitutional criminal procedure was announced, "[i]f a new sentencing rule [did] not apply retroactively, then any sentence in contravention of the new rule would not give rise to a valid challenged under Rule 27.03, subdivision 9"). Meger's motion to correct his sentence therefore should have been denied.[7]

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand the case to the district court to reinstate Meger's conditional-release term and for such further proceedings consistent with this opinion as necessary.

Reversed.

HUDSON, J., took no part in the consideration or decision of this case.

[7.] Because we conclude that *Her* does not apply retroactively to Meger's amended sentence, we need not address the State's arguments regarding the remedy to which Meger would be entitled if *Her* did apply retroactively to Meger's case.