STATE OF MINNESOTA

IN SUPREME COURT

A23-1511

Court of Appeals                                                                    Gaïtas, J.

Carlos Heard,

        Appellant,

vs.                                                                    Filed: June 18, 2025
                                                                     Office of Appellate Courts
State of Minnesota,

        Respondent.

_____

Cathryn Middlebrook, Chief Appellate Public Defender, Gina D. Schulz, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Elizabeth Scoggin, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

1.      Our decisions in *State v. Coleman*, 957 N.W.2d 72 (Minn. 2021), and *State v. Noor*, 964 N.W.2d 424 (Minn. 2021), announced new rules of substantive law concerning the mental-state element of third-degree depraved-mind murder under

1

Minnesota Statutes section 609.195(a) (2024), which apply retroactively to convictions that were final when these rules were announced.

2.      A postconviction petitioner is not required to independently satisfy the requirements of *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976), if the petitioner establishes that a new interpretation of state law is retroactively applicable to the petitioner's case in the first postconviction petition filed after the new interpretation of state law is announced.

Reversed and remanded.

O P I N I O N

GAÏTAS, Justice.

In this case, we are asked to decide whether two decisions of this court—*State v. Coleman*, 957 N.W.2d 72 (Minn. 2021), and *State v. Noor*, 964 N.W.2d 424 (Minn. 2021)—which address the mental state required for the offense of third-degree depraved-mind murder, Minn. Stat. § 609.195(a) (2024)—announced new rules of substantive law that apply retroactively to convictions for that offense.  Appellant Carlos Heard was convicted of third-degree depraved-mind murder, and his conviction became final eight years before we issued these decisions.  In 2023, Heard petitioned for postconviction relief, arguing that *Coleman* and *Noor* announced new substantive rules that retroactively applied to his conviction.  Although the postconviction statute generally prohibits petitions filed more than two years after the entry of a judgment of conviction, Heard contended that his petition satisfied the statutory exception to the two-year time bar for new interpretations of law.  The district court denied Heard's petition, and the court of appeals affirmed.  We conclude that our decisions in *Coleman* and *Noor* announced new

rules of substantive law that apply retroactively to Heard's conviction and that Heard's postconviction petition was timely filed under the new-interpretation-of-law exception to the statutory time bar. Thus, we reverse the court of appeals' decision and remand to the district court with instruction to consider whether the rules announced in *Coleman* and *Noor* affect the validity of Heard's conviction.

**FACTS**

Following a 2011 jury trial, Heard was convicted of third-degree depraved-mind murder, Minn. Stat. § 609.195(a) (2004), for shooting and killing his brother during a struggle over a gun, and second-degree intentional murder, Minn. Stat. § 609.19, subd. 1(1) (2004), for killing another person after gaining control of the gun. The district court sentenced Heard to 313 months in prison for second-degree intentional murder and a consecutive prison term of 180 months for third-degree depraved-mind murder. Heard directly appealed to the court of appeals, challenging only the district court's decision to allow impeachment evidence at his trial. The court of appeals affirmed Heard's convictions, and this court denied review. *See State v. Heard*, No. A11-1628, 2012 WL 3263775, at *6 (Minn. App. Aug. 13, 2012), *rev. denied* (Oct. 24, 2012). Subsequently, Heard filed four postconviction petitions, which were all denied.[1]

Heard's fifth postconviction petition is presently before us. His fifth postconviction petition asserts that our decisions in *State v. Coleman*, 957 N.W.2d 72 (Minn. 2021), and

---

[1] Heard unsuccessfully appealed the denial of two of those postconviction petitions. *See Heard v. State*, No. A20-0672, 2020 WL 7490504, at *3 (Minn. App. Dec. 21, 2020); *Heard v. State*, No. A14-1578, 2015 WL 1758005, at *4 (Minn. App. Apr. 20, 2015).

3

*State v. Noor*, 964 N.W.2d 424 (Minn. 2021), announced new rules of substantive law that apply retroactively to invalidate his third-degree murder conviction. *Coleman* and *Noor* both address different aspects of the mens rea—or the mental-state—element of third-degree depraved-mind murder: "a depraved mind, without regard for human life." Minn. Stat. § 609.195(a) (2024).[2] In *Coleman*, we stated that this element "requires a showing that [an] eminently dangerous act was committed with a mental state of *reckless disregard of human life*," rather than "a mental-state element that requires a showing that the *act* was committed in a *reckless manner*." 957 N.W.2d at 80. Then, in *Noor*, we stated that "the mental state required for depraved-mind murder cannot exist when the defendant's actions are directed with particularity at the person who is killed," and we overruled our decision in *State v. Mytych*, 194 N.W.2d 276 (Minn. 1972), which affirmed the defendant's third-degree depraved-mind convictions even though she had directed her actions with particularity at the victims. *Noor*, 964 N.W.2d at 433–36.

Because Heard filed his present postconviction petition ten years after his conviction became final, it implicated the two-year time bar in Minnesota's postconviction statute. Minn. Stat. § 590.01, subd. 4(a) (2024) (providing that no petition for postconviction relief may be filed more than two years after judgment is entered). But the petition asserts that because *Coleman* and *Noor* announced new interpretations of state statutory law, Heard's request for relief can be considered under an exception to the two-year time bar for new interpretations of law. Minn. Stat. § 590.01, subd. 4(b)(3) (2024); *see also* Minn. Stat.

---

[2]     Heard was convicted under the version of section 609.195(a) that was in effect when his offense occurred in 2004. The Legislature has not amended the statute since that time.

§ 590.01, subd. 4(c) (2024) (stating that "[a]ny petition invoking an exception provided in paragraph (b) must be filed within two years of the date the claim arises").[3]

The district court determined that *Coleman* and *Noor* do not provide new interpretations of state law, but rather, affirm old rules. Based on this determination, the district court concluded that Heard's postconviction petition did not satisfy the exception for new interpretations of law, and it denied postconviction relief without reaching the merits of Heard's argument that *Coleman* and *Noor* entitle him to a new trial. In a unanimous and precedential decision, the court of appeals affirmed, holding that *Coleman* "clarified" old law and that *Noor* "reaffirmed" existing law, and therefore, Heard's postconviction petition was untimely. *Heard v. State*, 8 N.W.3d 662, 669–72 (Minn. App. 2024). We granted Heard's petition for further review.

## ANALYSIS

Heard argues that our decisions in *Coleman* and *Noor*—separately and together—announced new rules of law that are retroactively applicable to his conviction for third-degree depraved-mind murder. He further argues that because these decisions announced new rules of law that are retroactively applicable to his case, he timely filed his postconviction petition under the postconviction statute. The postconviction statute provides an exception to the general two-year time bar when a petitioner asserts a new interpretation of state statutory law and establishes that it is retroactively applicable to the

---

[3]    Heard's fifth postconviction petition was filed within two years of the *Coleman* and *Noor* opinions. The petition was filed on March 27, 2023. Our opinion in *Coleman* was filed on March 31, 2021, and our opinion in *Noor* was filed on September 15, 2021.

5

petitioner's case.  Heard contends that because he timely filed his postconviction petition, the district court abused its discretion in dismissing it as untimely.

We review the denial of a petition for postconviction relief for an abuse of discretion. *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017).  "A postconviction court abuses its discretion when it has exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Id.* (citation omitted) (internal quotation marks omitted).  Whether a rule of law applies retroactively to convictions that were final when the rule was announced is a legal question that we review de novo.  *See Johnson v. State*, 916 N.W.2d 674, 681 (Minn. 2018).

Minnesota Statutes section 590.01, subdivision 4(a), provides that no petition for postconviction relief may be filed more than two years after judgment is entered in a criminal case.  However, the statute provides five exceptions to this time bar, including one for new interpretations of law.  That exception provides:

> (b) Notwithstanding paragraph (a), a court may hear a petition for postconviction relief if:
> . . .
> (3) the petitioner asserts a new interpretation of federal or state constitutional or statutory law by either the United States Supreme Court or a Minnesota appellate court and the petitioner establishes that this interpretation is retroactively applicable to the petitioner's case.

Minn. Stat. § 590.01, subd. 4(b)(3).  To satisfy the new-interpretation-of-law exception to the two-year time bar, a petitioner must file a petition for postconviction relief within two years of the exception arising.  Minn. Stat. § 590.01, subd. 4(c); *Aili v. State*, 963 N.W.2d 442, 446–47 (Minn. 2021).  "A postconviction petitioner knows or should know he has a claim on the date that a court decision announces an interpretation of law

that provides the basis for a claim that the petitioner is entitled to relief because the interpretation is a new rule of law that applies retroactively to the petitioner's conviction." *Aili*, 963 N.W.2d at 449.

Here, there is no dispute that Heard petitioned for postconviction relief within two years of our decisions in *Coleman* and *Noor*. But for Heard's petition to satisfy the new-interpretation-of-law exception to the postconviction time bar, *Coleman* and *Noor* must have announced a new interpretation of state constitutional or statutory law that is retroactively applicable to Heard's case. Our focus here is whether either—or both—of these two decisions announced new rules of law that retroactively apply to Heard's conviction.

## I.

## A.

We first identify the law that we must apply to decide whether a prior decision of this court announced a new rule of state constitutional or statutory law that is retroactive. To decide whether a rule of federal constitutional criminal law is a new rule that applies retroactively, we apply the standard established by the United States Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989). *Aili*, 963 N.W.2d at 447. Whether the *Teague* standard also applies to the circumstances presented here—where a postconviction petition alleges that a new interpretation of state statutory law satisfies the new-interpretation-of-law exception to the postconviction statute's two-year time bar—is an open question. It is also a question that is not before us in this case. Both parties relied on the *Teague* standard in the lower courts. The lower courts assumed that the *Teague*

7

standard applies under the circumstances here. And both parties continue to rely on the *Teague* standard before this court. We therefore assume, without deciding, that the *Teague* standard applies in this case. *See State v. Meger*, 901 N.W.2d 418, 422 n.4 (Minn. 2017) (similarly concluding that "[b]ecause the parties agree that *Teague* applies in this case, we assume, without deciding, that *Teague* provides the applicable framework here").

In *Teague*, the Supreme Court observed that old rules, which are an extension of existing precedent, apply on collateral review—such as when a petitioner brings a postconviction challenge to a conviction. *See Teague*, 489 U.S. at 301. But new rules generally are not retroactive. *Id.* Although new rules typically apply to cases that are pending before an appellate court when announced, they cannot be used to challenge a conviction that is already final. *Id.* *Teague* identified two exceptions to the general principle that a new rule is not retroactively applicable. *Id.* at 310. A new rule may be applied retroactively if it "(1) is substantive, as compared to procedural, or (2) is a new 'watershed' rule of criminal procedure." *Johnson*, 916 N.W.2d at 681. Subsequently, in *Edwards v. Vannoy*, the Supreme Court eliminated the watershed exception for federal cases. 593 U.S. 255, 272 (2021). We have not addressed the continued vitality of the watershed exception under Minnesota law in light of *Edwards*, nor do we have a need to do so here. *See Aili*, 963 N.W.2d at 447–48 n.4.

To apply the *Teague* standard, a court must first ask "whether the rule . . . is new, or whether it is merely a predictable extension of a pre-existing doctrine." *Meger*, 901 N.W.2d at 422 (citation omitted) (internal quotations marks omitted). A rule is new if it "breaks new ground or imposes a new obligation on the States or the Federal

8

Government." *Teague*, 489 U.S. at 301. "To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* We have stated that "it is not enough that a holding is logically an extension of some precedent, as that is true of virtually all recently announced rules." *Meger*, 901 N.W.2d at 422 (citation omitted) (internal quotation marks omitted). "Rather, the test is whether reasonable jurists hearing [the] petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to rule in his favor." *Id.* at 423 (citation omitted) (internal quotation marks omitted). "In other words, a decision announces a new rule if the outcome was susceptible to debate among reasonable minds." *Id.* (cleaned up).

If a decision announced a new rule of law, we next ask whether the law is substantive or procedural. *Aili*, 963 N.W.2d at 447. A new rule that is substantive may be applied retroactively. *Johnson*, 916 N.W.2d at 681. Substantive rules "alter[] the range of conduct or the class of persons that the law punishes." *Id.* at 681–82 (citation omitted) (internal quotation marks omitted). "In other words, a decision that narrows the scope of a criminal statute, as well as a constitutional determination that places particular conduct or persons covered by the statute beyond the State's power to punish is substantive for purposes of the retroactivity analysis." *Id.* at 682 (cleaned up). By contrast, procedural rules regulate "only the *manner of determining* the defendant's culpability." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). A new rule of procedural law does not result in a group of persons who may no longer be guilty of a particular offense, but rather, it creates a " '*possibility* that someone convicted with use of the invalidated procedure might have

9

been acquitted otherwise.' " *Johnson*, 916 N.W.2d at 682 (quoting *Schriro*, 542 U.S. at 352).

Against this legal backdrop, we next consider whether our decisions in *Coleman* and *Noor* announced new rules.

B.

1.

We initially consider *Coleman*. In *Coleman*, we addressed the mental state required to commit the offense of third-degree depraved-mind murder. 957 N.W.2d at 77–81.

Coleman, whose alcohol concentration was twice the legal limit, drove a snowmobile at nearly 60 miles per hour across a busy frozen lake. *Id.* at 75. The snowmobile struck and killed a child standing next to an icehouse. *Id.* at 74. A jury found Coleman guilty of third-degree depraved-mind murder, and the district court sentenced him to prison. *Id.* at 75.

Coleman appealed his conviction to the court of appeals, arguing that the pattern jury instruction that his jury received for third-degree depraved-mind murder failed to adequately convey the mental-state element of the offense. *State v. Coleman*, 944 N.W.2d 469, 477 (Minn. App. 2020), *aff'd*, 957 N.W.2d 72 (Minn. 2021). As to the mental-state element, the district court instructed Coleman's jury that it had to find that:

> [The defendant's] intentional act which caused the death of [the child] was eminently dangerous to human beings and was performed without regard for human life.
>
> Such an act may not be specifically intended to cause death and may not be specifically directed at [the child], but it was committed in a reckless

10

or wanton manner with the knowledge that someone may be killed and with a heedless disregard of that happening.

*Id.* at 477 (second and third alteration by the court of appeals). Coleman argued to the court of appeals that this instruction materially misstated the law. *Id.* The court of appeals agreed that the instruction was incorrect. *Id.* at 479–80. It determined that the instruction should have informed the jury that "an actor evinces a depraved mind when the actor engages in conduct that the actor is aware creates a substantial and unjustifiable risk to human life and consciously disregards that risk." *Id.* at 474. But because Coleman failed to object to the instruction at trial, the court of appeals applied plain-error review. *Id.* at 476. Upon plain-error review, the court of appeals determined that the error was not plain because the instruction did not directly contravene any decision of the court of appeals or this court. *Id.* at 480.

We granted review. Before turning to the jury instruction given at Coleman's trial, we noted that it was necessary to "first determine the proper mental state for third-degree depraved mind murder." *Coleman*, 957 N.W.2d at 77. We then traced the development of our case law in this area. *Id.* at 77–80. Our decision observed that, in several cases, we suggested that the mental-state element for third-degree depraved-mind murder was general recklessness. *Id.* at 79. We concluded that those statements were dicta and that they were ill-advised because they led to "ongoing confusion regarding the mental state required for third-degree depraved mind murder." *Id.* Specifically, some of our case law led "some to believe that the statute requires a *reckless act*, as opposed to a *mental state of reckless disregard of life*," and unfortunately, this confusion persisted. *Id.* at 79–80.

11

Based on our review of our case law in *Coleman*, we determined that "our precedents show that we have established no clear directive as to the mental state required for third-degree depraved mind murder." *Id.* at 80. We then "clarif[ied]" that our earlier cases "did not create a mental-state element that requires a showing that the *act* was committed in a *reckless manner*." *See id.* Citing to a concurrence in our decision in *Netland*, we held that the mental-state element of third-degree depraved-mind murder instead "requires a showing that the eminently dangerous act was committed with a mental state of *reckless disregard of human life*." *Id.* (citing *State v. Netland*, 535 N.W.2d 328, 332 (Minn. 1995) (Tomljanovich, J., concurring)). We further stated:

> Accordingly, we hold that a person commits an eminently dangerous act (one that is highly likely to cause death) without regard to human life, when based on the surrounding circumstances one can infer that the defendant was indifferent to the loss of life that the defendant's eminently dangerous act could cause.

*Id.* at 80.

After defining the mental state required for third-degree depraved-mind murder, we considered the pattern jury instruction that Coleman's jury had received. *Id.* at 81. We determined that the pattern instruction materially misstated the law because it did not accurately reflect the mental-state element of the offense. *Id.* However, we did not go on to consider whether the error was plain because, "even applying our clarified mental-state element . . . , Coleman . . . failed to establish that the error affected his substantial rights." *Id.* We concluded that, given the overwhelming evidence of Coleman's indifference to the loss of human life that his eminently dangerous conduct could cause, he was not prejudiced by the incorrect jury instruction. *Id.* at 82–83.

12

Heard argues that *Coleman* announced a new rule of law. He points out that the decision acknowledged that this court had not previously established a "clear directive" as to the mental state required for third-degree depraved-mind murder. *Id*. Moreover, he notes that the decision invalidated the pattern jury instruction that had long been used in such cases.[4]

The State responds that *Coleman* makes clear that the pattern jury instruction—and not this court's decisions—sowed confusion about the mental-state element because the instruction misstated this court's case law. And the State contends that pattern jury instructions, unlike decisions of this court, are not binding authority. The State also argues that the *Coleman* decision explicitly states that it clarifies existing precedent. According to the State, a clarification is not an announcement of a new rule of law.

In *Coleman*, we stated that our previous case law had not established a "clear directive" as to the mental-state element for third-degree depraved-mind murder. *Id.* at 80. We recognized that our earlier decisions resulted in "ongoing confusion regarding the mental state required for third-degree depraved mind murder." *Id.* at 79. And for the first time in *Coleman*, we directly articulated the required mental state for third-degree depraved-mind murder. *Id*. at 80. Additionally, we held in *Coleman* that the pattern jury

---

[4] The pattern jury instruction was later amended based, in part, on the *Coleman* decision. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instructions Guides, Criminal*, CRIMJIG 7.15 n.3 (7th ed. 2024). That instruction now defines the offense of "Murder in the Third Degree—Eminently Dangerous Act" under Minnesota Statutes section 609.195(a) as the following: "Under Minnesota law, whoever causes the death of another person by perpetrating an act eminently dangerous to others, without regard for human life, but without intent to cause the death of any person, is guilty of a crime."

instruction, which cited to our case law as authority, materially misstated the mental-state element for the offense. *Id.* at 78 n.3 (observing that the erroneous language in the pattern jury instruction purportedly was taken from this court's decision in *State v. Lowe*, 68 N.W. 1094 (Minn. 1896) (citing 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instructions Guides, Criminal*, CRIMJIG 11.38 n.2 (6th ed. 2015))).

Although the State correctly observes that we used the term "clarify" in describing our decision, our analysis in *Coleman* demonstrates that we announced a new rule of law. We effectively acknowledged that the mental-state element for third-degree depraved-mind murder was "susceptible to debate among reasonable minds." *See Meger*, 901 N.W.2d at 423 (cleaned up). To address the "ongoing confusion," we then identified the required mental state for the offense. *Coleman*, 957 N.W.2d at 79–80. Given our analysis, the decision in *Coleman* was not merely a predictable extension of a preexisting doctrine. Rather, under the *Teague* standard, *Coleman* announced a new rule of law. We conclude that the court of appeals erred in holding otherwise.

2.

Next, we consider whether our decision in *Noor* also announced a new rule of law. In *Noor*, we addressed whether a defendant can be convicted of third-degree depraved-mind murder if the defendant's act was directed at a particular person. 964 N.W.2d at 427.

Noor was a police officer who shot and killed a person while responding to that person's call for assistance. *Id.* The caller had contacted 911 to report a possible crime in the alley behind her home. *Id.* As Noor and his partner were in the alley investigating, the

14

caller approached their police vehicle, startling Noor. *Id.* Noor fired his gun out of his partner's window and directly at the caller, striking and killing her. *Id.* A jury found Noor guilty of third-degree depraved-mind murder for this incident. *Id.* at 429.

Noor appealed to the court of appeals, arguing that the evidence was insufficient to support his conviction for third-degree depraved-mind murder because his act of shooting had been directed at a particular person—the caller. *State v. Noor*, 955 N.W.2d 644, 652 (Minn. App. 2021), *rev'd*, 964 N.W.2d 424 (Minn. 2021). He contended that an act directed at a particular person cannot constitute third-degree depraved-mind murder because the statute defining the offense criminalizes a generalized indifference to human life. *Id.*

The court of appeals affirmed Noor's conviction, relying in part on our decision in *State v. Mytych*, 194 N.W.2d 276 (Minn. 1972). *Noor*, 955 N.W.2d at 652–56. In that case, we affirmed Mytych's conviction for third-degree depraved-mind murder for killing the wife of her romantic interest. *Mytych*, 194 N.W.2d at 283. The evidence established that Mytych had purchased a revolver, flown from Chicago to Saint Paul under an assumed name, traveled to her romantic interest's apartment, shot and injured her romantic interest, and shot and killed his wife. *Id.* at 278. On appeal to this court, Mytych argued that she could not be guilty of third-degree depraved-mind murder for killing the wife because "the facts show that the fatal shots were directed with particularity and may have well been the result of culpable negligence which would constitute second-degree manslaughter." *Id.* at 281. We did not specifically address this argument in the *Mytych* decision. *See id.* at 281–83. But we stated that "[t]he trial court was justified in finding that defendant was guilty

15

of something more serious than culpable negligence, and that her acts evinced a depraved mind in the sense in which that term is used in the statute defining murder in the third-degree." *Id.* at 283.

In affirming Noor's conviction, the court of appeals observed that *Mytych* remained good law. *See Noor*, 955 N.W.2d at 652. And it observed that *Mytych* stood for the proposition that a person can commit the offense of third-degree depraved-mind murder even when the act that results in death is directed at a particular person. *Id.* at 653. The court of appeals stated:

> Because [the third-degree depraved-mind statute] does not require that more than one person be put in jeopardy and the supreme court in *Mytych* upheld a conviction of third-degree murder even though the victims were known to and targeted by the defendant, we cannot say that Noor's third-degree murder conviction is invalid simply because his dangerous act was directed at the single person outside of his partner's window.

*Id.* at 655.

We granted review in *Noor*. Before this court, the State relied on *Mytych* to argue that Noor's conviction for third-degree depraved-mind murder should be upheld even though the evidence established that Noor directed his act of shooting at the caller. *Noor*, 964 N.W.2d at 433. The State argued that *Mytych* established that a third-degree depraved-mind murder conviction could be based on conduct directed at a particular person. *Id.*

However, noting that we are " 'extremely reluctant to overrule' " our decisions, our decision in *Noor* overruled *Mytych*. *Id.* at 435 (quoting *Daniel v. City of Minneapolis*, 923 N.W.2d 637, 645 (Minn. 2019)). We concluded that *Mytych* was "clearly and

16

manifestly wrong when it was decided, and it remains clearly wrong today." *Id.* We observed that the decision was poorly reasoned and inconsistent with our other case law. *Id.* at 436. And we went on to hold in *Noor* that the mental state required for third-degree depraved-mind murder is "a generalized indifference to human life," which "cannot exist when the defendant's conduct is directed with particularity at the person who is killed." *Id.* at 438.

Heard argues that our decision in *Noor* announced a new rule of law. He first contends that, under the *Teague* standard, a court always announces a new rule of law when it overrules binding precedent, even when the overruled decision was an outlier, such as *Mytych*. To support this argument, Heard relies on the United States Supreme Court's decision in *Edwards v. Vannoy*, 593 U.S. 255, 272 (2021), where the Court—in holding that its prior decision overruling an outlier case in its jurisprudence announced a new rule of law—observed that overruling a binding precedent is "[t]he starkest example of a decision announcing a new rule."[5] *Id.* at 265.

But we need not, and do not, decide whether a decision of this court that overrules binding precedent *always* announces a new rule of law. We decide instead, as Heard alternatively argues, that the *Mytych* decision—even though it was wrongly

---

[5] The Supreme Court concluded in *Edwards* that its earlier decision *Ramos v. Louisiana*, 590 U.S. 83 (2020)—which overruled *Apodaca v. Oregon*, 406 U.S. 404 (1972), to the extent that it was inconsistent with the holding that the constitutional requirement for jury unanimity in criminal cases applies to the states—announced a new rule of law. *Edwards*, 593 U.S. at 276. But the Court did not conclude that this resulted in the new rule applying retroactively. *Id.* This was because, as the Court explained, "new *procedural* rules do not apply retroactively on federal collateral review." *Id.* (emphasis added).

decided—created sufficient uncertainty in the law such that the question of whether a third-degree depraved-mind murder could include an act directed at a particular person "was susceptible to debate among reasonable minds." *Meger*, 901 N.W.2d at 423. Although we may not have relied on *Mytych* to address the specific issue raised in *Noor* before our *Noor* decision, we cited *Mytych* as recently as 2019 when addressing the mental-state element of third-degree depraved-mind murder. *See State v. Hall*, 931 N.W.2d 737, 741 (Minn. 2019) (citing *Mytych* for the proposition that the State is not required to prove a defendant's *lack* of an intent to effect death to establish the commission of third-degree depraved-mind murder). Moreover, the two judges in the court of appeals' majority in *Noor* were convinced that *Mytych* was good law. And the State continued to rely on *Mytych* when it appeared before this court in Noor's case. Because reasonable jurists believed before our decision in *Noor* that a person could commit the offense of third-degree depraved-mind murder by directing an act toward a particular person, *Noor* announced a new rule when it stated that the required mental state for this offense "cannot exist when the defendant's conduct is directed with particularity at the person who is killed." *Noor*, 964 N.W.2d at 438. We therefore conclude that *Noor* announced a new rule of law for the purpose of the *Teague* standard. The court of appeals erred in holding otherwise.

The next part of the *Teague* retroactivity analysis requires us to decide whether the new rules announced in *Coleman* and *Noor* are substantive or procedural.[6]

---

[6] The courts below did not address this issue because they determined that the decisions concerned old rules.

18

C.

As noted, under the *Teague* standard, new rules that are substantive apply retroactively to final convictions. *Johnson*, 916 N.W.2d at 681. On the other hand, new rules that are procedural generally do not apply retroactively. *Id.* A rule is substantive if it "alters the range of conduct . . . that the law punishes." *Id.* at 681–82 (citation omitted) (internal quotation marks omitted). Procedural rules regulate only the procedures for determining a defendant's culpability. *Id.* at 682.

We agree with Heard that the new rules we announced in *Coleman* and *Noor* are substantive.[7] In both cases, we defined the mental-state element of the offense of third-degree depraved-mind murder. We stated in *Coleman* that to prove the mental-state element of the offense, the State must establish that the defendant was indifferent to the loss of life that the defendant's eminently dangerous act could cause. 957 N.W.2d at 73. And we stated in *Noor* that the mental-state element of third-degree depraved-mind murder cannot exist when a defendant's conduct is directed with particularity at the person who is

---

[7] The State asks us not to address the question of whether *Coleman* and *Noor* announced new substantive or procedural rules. It argues that we should remand to allow the district court to consider this question in the first instance. Although the State's brief acknowledges that it did not argue during the proceedings before the district court that *Coleman* and *Noor* announced procedural rules, the State suggests that it was not required to do so because the sole question presented to the district court was whether Heard was entitled to an evidentiary hearing.

However, Heard did not request an evidentiary hearing. And the record confirms that the State did not argue in its filings to the district court or the court of appeals that *Coleman* and *Noor* announced procedural rules. Thus, the State has forfeited any argument that the rules announced in these cases are procedural. *See State v. Torgerson*, 995 N.W.2d 164, 168 n.3 (Minn. 2023) (declining to address an issue based on the forfeiture doctrine because the State had not raised it to the district court or the court of appeals).

killed. 964 N.W.2d at 426. By defining the mental-state element of the offense, our new rules altered the range of conduct that the law punishes. Accordingly, our decisions in *Coleman* and *Noor* announced substantive rules. Under the *Teague* standard, because *Coleman* and *Noor* announced new rules of substantive law, our decisions in those cases apply retroactively.

II.

The final question we must address is whether the district court can consider the merits of Heard's postconviction petition notwithstanding the two-year statutory time bar under our state postconviction statute, section 590.01. Although Heard acknowledges that he brought his petition for postconviction relief more than two years after his conviction for third-degree depraved-mind murder became final, he contends that his petition is timely under the exception to the two-year statutory time bar for new interpretations of law. *See* Minn. Stat. § 590.01, subd. 4(b)(3). That exception allows a district court to hear a petition for postconviction relief if a petitioner asserts a new interpretation of state statutory law within two years of a court decision announcing a new rule of law that retroactively applies to the petitioner's case. Minn. Stat. § 590.01, subd. 4(b)(3); *id.*, subd. 4(c); *see also Aili*, 963 N.W.2d at 449.

The State does not dispute that Heard filed his petition for postconviction relief within two years of our decisions in *Coleman* and *Noor*. *See* Minn. Stat. § 590.01, subd. 4(c) ("Any petition invoking an exception provided in paragraph (b) must be filed within two years of the date the claim arises."). But the State argues that Heard must overcome an additional hurdle for the district court to consider the merits of his case.

20

According to the State, Heard must also show that his petition is not procedurally barred under our decision in *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976). In *Knaffla*, we held that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."[8] *Id.* at 741. When a petitioner did not previously raise a claim, there are two exceptions to the *Knaffla* procedural bar: (1) if the petition presents a novel legal issue or (2) if the interests of justice require review. *Gilbert v. State*, 2 N.W.3d 483, 487 (Minn. 2024). The State contends that because Heard did not raise his claims regarding the mental state required for third-degree depraved-mind murder in his direct appeal or the four postconviction petitions he filed *before* we announced our decisions in *Coleman* and *Noor*, his claims are barred by the rule announced in *Knaffla*. We disagree.

The State cites no authority for the proposition that postconviction petitioners are required to independently satisfy the requirements of *Knaffla* when they establish that a new interpretation of state law is retroactively applicable to them in the first postconviction petition they file after the new interpretation of state law is announced. Nor does the State

---

[8] *Knaffla* was decided before the Legislature amended subdivision 1 of Minnesota Statutes § 590.01 to include the sentence, "A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that *could have been raised* on direct appeal of the conviction or sentence." Act of June 2, 2005, ch. 136, art. 14, § 12, 2025 Minn. Laws 901, 1097 (emphasis added). We have not yet decided the impact of those amendments on *Knaffla* and its exceptions. *See Onyelobi v. State*, 932 N.W.2d 272, 279 n.3 (Minn. 2019); *Fox v. State*, 913 N.W.2d 429, 433 n.2 (Minn. 2018); *Hooper v. State*, 838 N.W.2d 775, 788 n.2 (Minn. 2013). Neither party has asked us to reach this issue here, and we assume without deciding that *Knaffla* remains good law.

21

make a convincing argument that the requirements of *Knaffla* must be independently satisfied in this context.

Neither the postconviction statute nor our case law support the State's contention that a petitioner who satisfies the new-interpretation-of-law exception to the statutory time bar in the first postconviction petition they file after the new interpretation of state law is announced must independently show that the claim is not *Knaffla* barred. Moreover, holding that Heard's claims regarding the mental state required for third-degree depraved-mind murder are procedurally barred by *Knaffla* because he did not raise the claims in the direct appeal and four postconviction petitions he filed *before* we announced our decisions in *Coleman* and *Noor* would render the new-interpretation-of-law exception to section 590.01 meaningless. Requiring petitioners to anticipate and raise a new rule of law *before* the new rule is announced is inconsistent with the plain language and clear purpose of the new-interpretation-of-law exception to the statute. Furthermore, doing so would be incompatible with our precedent. We have stated that "[w]e cannot expect a defendant to foresee a new rule of law." *State v. Osborne*, 715 N.W.2d 436, 442 (Minn. 2006). And we have held that a "new rule of law, announced after a direct appeal has been completed, may present a claim that was unknown on direct appeal, and thus is not barred by *Knaffla*." *Stiles v. State*, 716 N.W.2d 327, 329 (Minn. 2006).

Accordingly, we hold that a postconviction petitioner is not required to independently satisfy the requirements of *Knaffla* if the petitioner establishes that a new interpretation of state law is retroactively applicable to the petitioner's case in the first postconviction petition filed after the new interpretation of state law is announced.

\* \* \*

Heard established that *Coleman* and *Noor* announced new interpretations of state law that are retroactively applicable to him in the first postconviction petition that he filed after the new interpretations of state law were announced. Moreover, Heard filed his postconviction petition within two years of our decisions in *Coleman* and *Noor*. Thus, Heard's postconviction petition was timely filed under the new-interpretation-of-law exception to the statutory time bar, and the court of appeals erred when it determined that the petition was untimely and affirmed the district court's denial of the petition. Because the district court did not consider the merits of Heard's postconviction claims, a remand to the district court is necessary.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court to consider the effect of our decisions in *Coleman* and *Noor* on Heard's third-degree depraved-mind murder conviction.

Reversed and remanded.